1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JUL 1 1 2003   KN

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

MORRIS HAIMOWITZ, Derivatively,
On Behalf of CUTTER & BUCK, INC.,

Plaintiff,

vs.

FRANCES M. CONLEY, MICHAEL S.
BROWNFIELD, LARRY C.
MOUNGER, JAMES C. TOWNE,
HARVEY N. JONES, MARTIN J.
MARKS AND STEPHEN S. LOWBER,

Defendants,

- and -

CUTTER & BUCK, INC., a Washington
Corporation,

Nominal Defendant.

No. C03-2318P

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT FOR
BREACH OF FIDUCIARY DUTY,
ABUSE OF CONTROL, GROSS
MISMANAGEMENT AND UNJUST
ENRICHMENT

DEMAND FOR JURY TRIAL

Plaintiff submits, through his attorneys, the following Verified Shareholder

Derivative Complaint against the defendants named herin.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 1

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by a shareholder of Cutter &
Buck, Inc. ("Cutter & Buck" or the "Company"), on behalf of the Company against certain
of its officers and directors seeking to remedy defendants' violations of Washington law,
including breaches of fiduciary duties, which have caused substantial losses to Cutter &
Buck and other damages, such as to its reputation and goodwill from June 23, 2000 to
August 12, 2002 (the "Relevant Period").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §
1332(a)(1) in that plaintiffs and defendants are citizens of different states and the matter in
controversy exceeds $75,000, exclusive of interest and costs.

3.      This action is not a collusive one designed to confer jurisdiction on a court
of the United States which it would not otherwise have.

4.      Venue is proper in this Court because one or more of the defendants either
resides in or maintains executive offices in this District, a substantial portion of the
transactions and wrongs complained of herein, including the defendants' primary
participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in
violation of fiduciary duties owed to Cutter & Buck, occurred in this District, and
defendants have received substantial compensation in this District by doing business here
and engaging in numerous activities which had an effect in this District.

## PARTIES

5.      Plaintiff, Morris Haimowitz is, and at times relevant hereto was, a
shareholder of Cutter & Buck.  Mr. Haimowitz is a citizen of California.

6.      Nominal defendant, Cutter & Buck, is headquartered at 2701 First Avenue,
Suite 500, Seattle, Washington.  Defendant Cutter & Buck designs and markets upscale
men's and women's sportswear and outerwear under the Cutter & Buck brand.  The

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 2

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297 F (425)747-1763

1   Company sells its products primarily through golf pro shops and resorts, corporate
2   accounts, specialty retail, and Company-owned retail stores.

3       7.      Defendant Frances M. Conley ("Conley") is, and has been since on or about
4   April 19, 2002, interim Chairman of the Board and Chief Executive Officer ("CEO") of
5   Cutter & Buck.  Throughout the Relevant Period, Conley served as a Director, Chair of the
6   Audit Committee and as a member of the Compensation Committee of Cutter & Buck.
7   Because of Conley's positions, she knew of the adverse non-public information about the
8   business of Cutter & Buck, as well as its finances, markets and present and future business
9   prospects via access to internal corporate documents (including Cutter & Buck's operating
10  plans, budgets and forecasts and reports of actual operations compared thereto),
11  conversations and connections with other corporate officers and employees, attendance at
12  management and Board of Directors' meetings and committees thereof, and via reports and
13  other information provided to her in connection therewith.  During the Relevant Period,
14  Conley participated in the issuance and/or review of false and/or misleading statements,
15  including the preparation of false and/or misleading press releases and Securities Exchange
16  Commission ("SEC") filings.  Defendant Conley is a direct participant in the wrongdoing
17  complained of herein, in that in her current capacity as the Company's interim CEO and
18  Chairman of the Board, and in her capacity as a board member throughout the Relevant
19  Period, she engaged in the illegal acts and practices complained of herein by causing,
20  approving and/or authorizing the improper accounting and reporting of Cutter & Buck's
21  finances, business and prospects, specifically including the Company's improper entries of
22  sales into incorrect periods and inaccurate reporting of sales by distribution channels which
23  caused the Company to improperly recognize revenue for the fiscal years ended 2000,
24  2001 and 2002, the effect of all of which was to cause Cutter & Buck in August 2002 to
25  admit that it must restate its financial statements for fiscal years 2000, 2001 and 2002, and
    to reduce its previously reported earnings.  Conley is a citizen of Washington.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 3

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

8. Defendant Michael S. Brownfield ("Brownfield") is, and at all times relevant to the allegations raised herein was, a Director of the Company and a member of the Board's Compensation Committee and Chair of the Nominating Committee. Because of Brownfield's positions, he knew of the adverse non-public information about the business of Cutter & Buck, as well as its finances, markets and present and future business prospects via access to internal corporate documents (including Cutter & Buck's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with corporate officers and employees, attendance at Board of Directors' meetings and committees thereof, and via reports and other information provided to him in connection therewith. Defendant Brownfield is a direct participant in the wrongdoing complained of herein, in that in his capacity as a member of the Company's Board, he engaged in the illegal acts and practices complained of herein by causing, approving and/or authorizing the improper accounting and reporting of Cutter & Buck's finances, business and prospects, specifically including the Company's improper entries of sales into incorrect periods and inaccurate reporting of sales by distribution channels which caused the Company to improperly recognize revenue for the fiscal years ended 2000, 2001 and 2002, the effect of all of which was to cause Cutter & Buck in August 2002 to admit that it must restate its financial statements for fiscal years 2000, 2001 and 2002, and to reduce its previously reported earnings. Brownfield is a citizen of Washington.

9. Defendant Larry C. Mounger ("Mounger") is, and at all times relevant to the allegations raised herein was, a Director of the Company, a member of the Board's Audit Committee and Chair of the Compensation Committee. Because of Mounger's positions, he knew of the adverse non-public information about the business of Cutter & Buck, as well as its finances, markets and present and future business prospects via access to internal corporate documents (including Cutter & Buck's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 4

connections with corporate officers and employees, attendance at Board of Directors' meetings and committees thereof, and via reports and other information provided to him in connection therewith. Defendant Mounger is a direct participant in the wrongdoing complained of herein, in that in his capacity as a member of the Company's Board, he engaged in the illegal acts and practices complained of herein by causing, approving and/or authorizing the improper accounting and reporting of Cutter & Buck's finances, business and prospects, specifically including the Company's improper entries of sales into incorrect periods and inaccurate reporting of sales by distribution channels which caused the Company to improperly recognize revenue for the fiscal years ended 2000, 2001 and 2002, the effect of all of which was to cause Cutter & Buck in August 2002 to admit that it must restate its financial statements for fiscal years 2000, 2001 and 2002, and to reduce its previously reported earnings. Mounger is a citizen of Washington.

10. Defendant James C. Towne ("Towne") is, and at all times relevant to the allegations raised herein was, a Director of the Company and a member of the Board's Audit Committee. Because of Towne's position, he knew of the adverse non-public information about the business of Cutter & Buck, as well as its finances, markets and present and future business prospects via access to internal corporate documents (including Cutter & Buck's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with corporate officers and employees, attendance at Board of Directors' meetings and committees thereof, and via reports and other information provided to him in connection therewith. Defendant Towne is a direct participant in the wrongdoing complained of herein, in that in his capacity as a member of the Company's Board, he engaged in the illegal acts and practices complained of herein by causing, approving and/or authorizing the improper accounting and reporting of Cutter & Buck's finances, business and prospects, specifically including the Company's improper entries of sales into incorrect periods and inaccurate reporting of sales by distribution channels which caused the Company to improperly recognize revenue for the fiscal years

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297 F (425)747-1763

1   ended 2000, 2001 and 2002, the effect of all of which was to cause Cutter & Buck in

2   August 2002 to admit that it must restate its financial statements for fiscal years 2000,

3   2001 and 2002, and to reduce its previously reported earnings.  Towne is a citizen of

4   Washington.

5         11.    Defendant Harvey N. Jones ("Jones") was, until on or about April 19, 2002,

6   Chairman, Chief Executive Officer, a Director of the Company and a member of the

7   Board's Nominating Committee.  Because of Jones' positions, he knew of the adverse non-

8   public information about the business of Cutter & Buck, as well as its finances, markets

9   and present and future business prospects via access to internal corporate documents

10  (including Cutter & Buck's operating plans, budgets and forecasts and reports of actual

11  operations compared thereto), conversations and connections with corporate officers and

12  employees, attendance at Management and Board of Directors' meetings and committees

13  thereof, and via reports and other information provided to him in connection therewith.

14  Defendant Jones is a direct participant in the wrongdoing complained of herein, in that in

15  his capacity as Chairman, CEO and a member of the Company's Board, he engaged in the

16  illegal acts and practices complained of herein by causing, approving and/or authorizing

17  the improper accounting and reporting of Cutter & Buck's finances, business and

18  prospects, specifically including the Company's improper entries of sales into incorrect

19  periods and inaccurate reporting of sales by distribution channels which caused the

20  Company to improperly recognize revenue for the fiscal years ended 2000, 2001 and 2002,

21  the effect of all of which was to cause Cutter & Buck in August 2002 to admit that it must

22  restate its financial statements for fiscal years 2000, 2001 and 2002, and to reduce its

23  previously reported earnings.  Jones is a citizen of Washington.

24        12.    Defendant Martin J. Marks ("Marks") was, until on or about April 29, 2002,

25  President, Chief Operating Officer ("COO") and a Director of the Company.  Because of

Marks' positions, he knew of the adverse non-public information about the business of

Cutter & Buck, as well as its finances, markets and present and future business prospects

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 6

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297 F (425)747-1763

via access to internal corporate documents (including Cutter & Buck's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with corporate officers and employees, attendance at Board of Directors' meetings and committees thereof, and via reports and other information provided to him in connection therewith. Defendant Marks is a direct participant in the wrongdoing complained of herein, in that in his capacity as President, COO and a member of the Company's Board, he engaged in the illegal acts and practices complained of herein by causing, approving and/or authorizing the improper accounting and reporting of Cutter & Buck's finances, business and prospects, specifically including the Company's improper entries of sales into incorrect periods and inaccurate reporting of sales by distribution channels which caused the Company to improperly recognize revenue for the fiscal years ended 2000, 2001 and 2002, the effect of all of which was to cause Cutter & Buck in August 2002 to admit that it must restate its financial statements for fiscal years 2000, 2001 and 2002, and to reduce its previously reported earnings. Marks is a citizen of Washington.

13.     Defendant Stephen S. Lowber ("Lowber") was until on or about August 9, 2002, the Vice President and Chief Financial Officer ("CFO") of Cutter & Buck. Because of Lowber's positions, he knew the adverse non-public information about the business of Cutter & Buck, as well as its finances, markets and present and future business prospects via access to internal corporate documents (including Cutter & Buck's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management meetings, and via reports and other information provided to him in connection therewith. During the Relevant Period, Lowber participated in the issuance of false and/or misleading statements, including the preparation and/or review of false and/or misleading press releases and SEC filings. Defendant Lowber is a direct participant in the wrongdoing complained of herein, in that in his capacity as the Company's CFO, he engaged in the

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297 F (425)747-1763

illegal acts and practices complained of herein by causing, approving and/or authorizing the improper accounting and reporting of Cutter & Buck's finances, business and prospects, specifically including the Company's improper entries of sales into incorrect periods and inaccurate reporting of sales by distribution channels which caused the Company to improperly recognize revenue for the fiscal years ended 2000, 2001 and 2002, the effect of all of which was to cause Cutter & Buck in August 2002 to restate its financial statements for fiscal years 2000, 2001 and 2002, and to reduce its previously reported earnings.  Lowber is a citizen of Washington.

14.     The defendants named above in ¶¶ 7-12 are sometimes collectively referred to herein as the "Director Defendants."  In addition to the Director Defendants, Stephen S. Lowber was the former senior-most executive of the Company directly responsible for the Company's financial reporting, and was therefore responsible for causing the Company to issue false and misleading statements during the Relevant Period.  The defendants named above in ¶¶ 7-13 are sometimes collectively referred to herein as the "Individual Defendants."  By reason of their positions and their ability to control the business and corporate affairs of Cutter & Buck, the Individual Defendants owed Cutter & Buck and its shareholders fiduciary obligations of fidelity, trust, loyalty, good faith, fair dealing and due care, and were required to use their utmost ability to control and manage Cutter & Buck in a fair, just and equitable manner and to act in furtherance of the best interests of Cutter & Buck and all of its shareholders.  These obligations include the duty to investigate, conduct due diligence and to maximize the value to be received by Cutter & Buck's public shareholders.  The Individual Defendants breached their obligations by causing, approving and/or authorizing the improper accounting and reporting of Cutter & Buck's finances, business and prospects, specifically including the Company's improper entries of sales into incorrect periods and inaccurate reporting of sales by distribution channels, which caused the Company to improperly recognize revenue for the fiscal years ended 2000, 2001 and 2002, the effect of all of which was to cause Cutter & Buck in August 2002 to admit that it

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 8

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297 F (425)747-1763

1  must restate its financial statements for fiscal years 2000, 2001 and 2002 and to reduce its

2  previously reported earnings.

3  **SUMMARY OF ACTION**

4  15.    Cutter & Buck designs and markets upscale men's and women's sportswear

5  and outerwear under the Cutter & Buck brand.  The Company sells its products primarily

6  through golf pro shops and resorts, corporate accounts, specialty retail and Company-

7  owned retail stores.  This action results from the Individual Defendants causing Cutter &

8  Buck's to report false financial results and false statements about Cutter & Buck's finances,

9  business and prospects, specifically including the Company's improper entries of sales into

10  incorrect periods and inaccurate reporting of sales by distribution channels, which caused

11  the Company to improperly recognize revenue for the fiscal years ended April 30, 2000,

12  April 30, 2001, and April 30, 2002, causing the Company's stock to trade at artificially

13  inflated levels.  Cutter & Buck has now admitted that its revenue and earnings for fiscal

14  years 2000, 2001 and 2002 were materially overstated, will have to be restated, and should

15  not have been relied upon by investors.

16  **DUTIES OF THE INDIVIDUAL DEFENDANTS**

17  16.    Defendants owed fiduciary duties of good faith and fair dealing to Cutter &

18  Buck and its public shareholders.  To discharge their duties, the Individuals Defendants

19  were required to independently and effectively supervise and control Cutter & Buck's

20  executives and Cutter & Buck's policies, practices, controls and financial affairs and to:

21  (a)    Act in the best interests of Cutter & Buck and prevent any abuse of

22  control by other top executives in the conduct of the business and affairs of Cutter & Buck;

23  (b)    Govern Cutter & Buck to utilize its resources in a manner to benefit

24  the Company and its public shareholders and not the personal interests or preferences of

25  defendants;

(c)    Refrain from abusing their positions of control;

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 9

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297 F (425)747-1763

(d)     Not favor their own interests at the expense of Cutter & Buck;

(e)     In good faith oversee, supervise and direct the business and affairs of Cutter & Buck and its executives in accordance with the applicable laws;

(f)     Upon receiving notice of improper conduct to take steps to correct or remedy that conduct;

(g)     Exercise reasonable control and supervision over the officers and employees of Cutter & Buck; and

(h)     Honestly communicate with Cutter & Buck's shareholders.

17.     Thus, each of the Individual Defendants owed Cutter & Buck and its public shareholders obligations of candor, fidelity and loyalty, and not to attempt to frustrate or impede the maximization of shareholder value in order to obtain any improper monetary benefit in their capacity as an officer and/or director.

18.     Purportedly in exchange for their loyalty and fidelity, according to the Company's recent Proxy filing, defendant Jones, the senior-most officer and employee-director of the Company, and Lowber, the Company's CFO, received very significant compensation packages, excluding stock options, from Cutter & Buck during FY:99, 00 and 01, as follows:

| Name | Year | Salary ($) | Bonus ($) | All Other Compensation | Total Compensation |
|------|------|-----------|-----------|------------------------|--------------------|
| **Jones** | 2001 | 288,686 | 0 | 360 | 289,046 |
| | 2000 | 272,729 | 0 | 384 | 273,113 |
| | 1999 | 264,625 | 50,500 | 384 | 315,509 |
| **Lowber** | 2001 | 168,857 | 0 | 360 | 169,217 |
| | 2000 | 159,521 | 0 | 384 | 159,905 |
| | 1999 | 150,042 | 22,750 | 384 | 173,176 |

19.     In addition, purportedly in exchange for their loyalty and fidelity, the non-employee Director Defendants of the Company also received lucrative compensation from

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

1    the Company to ensure their duties of good faith and candor to the shareholders of the

2    Company. According to the Company's recent Proxy Statement, these non-employee

3    directors received very significant compensation packages from Cutter & Buck, as follows:

4    DIRECTOR COMPENSATION

5    The following fees are paid to directors who are not one of our officers or employees:

6
7         Annual board of directors retainer     $12,000
         Attendance for each board of directors $1,000
         per meeting
8         Attendance for each committee meeting  $500

9        In addition, directors who are not one of our officers or employees receive annual option grants to purchase 7,500 shares of our common stock

10    at the fair market value of the common stock on the date of grant. Those individuals also receive a quarterly $500 clothing allowance towards the purchase of Cutter & Buck clothing.

11

12        All directors are entitled to reimbursement for expenses incurred in traveling to and from board meetings.

13       20.     Each Officer and Director of Cutter & Buck owed Cutter & Buck and its

14    public shareholders the duty to exercise a high degree of due care, loyalty and diligence in

15    the management and administration of the affairs of the Company, as well as in the use and

16    preservation of its property and assets.

17       21.     The conduct of Cutter & Buck's Directors complained of herein involves a

18    knowing and culpable violation of their obligations as Directors of Cutter & Buck, the

19    absence of good faith on their part, and a knowing reckless or negligent disregard for their

20    duties to the Company and its shareholders, which the Directors were aware or should have

21    been aware posed a risk of serious injury to the Company.

22       22.     The conduct of the Individual Defendants who caused, approved and/or

23    authorized the improper accounting and reporting of Cutter & Buck's finances, business

24    and prospects, specifically including the Company's improper entries of sales into incorrect

25    periods and inaccurate reporting of sales by distribution channels, which caused the

Company to improperly recognize revenue for the fiscal years ended 2000, 2001 and 2002,

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 11

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

1  the effect of all of which was to cause Cutter & Buck in August 2002 to admit that it must

2  restate its financial statements for fiscal years 2000, 2001 and 2002 and to reduce its

3  previously reported earnings, has been ratified by Cutter & Buck's Board, and constitutes a

4  breach of the Directors' duties.  Each Director has failed to take any action against

5  themselves or the Company's other officers and/or Directors for the violations complained

6  of herein.

7      23.  Each Individual Defendant is sued individually in his or her respective

8  capacity as an officer and/or Director of Cutter & Buck.  The liability of each arises from

9  the fact that each participated in the activities complained of herein at the expense of

10  Cutter & Buck.

11      24.  Plaintiff alleges herein that the Individual Defendants, separately and

12  together, caused, approved and/or authorized the improper accounting and reporting of

13  Cutter & Buck's finances, business and prospects, specifically including the Company's

14  improper entries of sales into incorrect periods and inaccurate reporting of sales by

15  distribution channels, which caused the Company to improperly recognize revenue for the

16  fiscal years ended 2000, 2001 and 2002, the effect of all of which was to cause Cutter &

17  Buck in August 2002 to admit that it must restate its financial statements and to reduce its

18  previously reported earnings, and thereby violated the fiduciary duties owed to Cutter &

19  Buck and its public shareholders, including their duties of loyalty, good faith and

20  independence.  Defendants' actions were carried out at the expense of and to the detriment

21  of Cutter & Buck.

22      25.  As the allegations herein demonstrate, the Individual Defendants have

23  failed to act properly relating to the business of the Company, and, therefore, the

24  Individual Defendants, as a matter of law, have breached their fiduciary duties of good

25  faith and fair dealing owed to Cutter & Buck.

    26.  The Individual Defendants failed to provide oversight of Cutter & Buck's

accountants and auditors to ensure that sales transactions, specifically including the

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 12

1 Company's improper entries of sales into incorrect periods and inaccurate reporting of

2 sales by distribution channels, which caused the Company to improperly recognize

3 revenue for the fiscal years ended 2000, 2001 and 2002. As a direct result of the

4 Individual Defendants' illegal acts and practices, on August 12, 2002, the Individual

5 Defendants were forced to admit that the Company must restate its financial statements for

6 fiscal years 2000, 2001 and 2002 due to the defendants' improper revenue recognition that

7 resulted from the entries of sales into incorrect periods and inaccurate reporting of sales by

8 distribution channels.

**IMPROPER STATEMENTS**

9       27.     On June 22, 2000, after the market closed, the Individual Defendants caused

10 Cutter & Buck to issue a press release entitled, "Cutter & Buck Reports Records Fiscal

11 2000 Sales and Earnings." The press release stated in part:

12          Cutter & Buck, Inc. today reported record results for the fiscal year
13      ended April 30, 2000. Operating highlights are as follows:

14 FY 2000 HIGHLIGHTS:

15 –       Net sales totaled $152.5 million, 42% ahead of last year's $107.3
         million

16 –       Net income grew to $10.6 million, up 33% from $8.0 million in FY
17          1999

18 –       Net income per diluted share totaled $1.06 compared to $0.94 last
         year (a)

19 –       Percentage growth in inventory was less than 70% of annual sales
20          growth

21 –       Gross margins were 44.3%, 120 basis points ahead of FY 1999

22 FOURTH QUARTER HIGHLIGHTS:

23 –       Net sales grew 35% to $54.6 million from $40.4 million in the same
         quarter last year

24 –       Net income increased 27% to $5.8 million from $4.6 million
         reported for the same quarter last year

25 –       Net income per diluted share was $0.55 compared to $0.53 in the
         same quarter last year (a)

—   Gross margins were 44.6%, 60 basis points ahead of last year's fourth quarter

(a)   Current year per share information includes a 24% increase (1,955,000 shares) in the number of shares outstanding as a result of the company's follow-on stock offering last summer.

"I am pleased with the company's ability to leverage our prestigious position in the worldwide golf market.  Over the past few years, we have expanded our specialty retail division and strategically placed company-owned retail stores around the country.  Both channels showcase our fashion collections in a very powerful manner and we have achieved outstanding growth in each," said Harvey Jones, Chairman and Chief Executive officer.  "Benefiting from our growing brand awareness, our corporate channel continues to produce very strong results with sales growing 73% over last year."

28.   On September 7, 2000, the Individual Defendants caused Cutter & Buck to issue a press release entitled, "Cutter & Buck Reports First Quarter Sales and Earnings; Net Income Increases 27% on 34% Growth in Net Sales."  The press release stated in part:

Cutter & Buck, Inc. today reported results for the first quarter of fiscal 2001, which ended July 31, 2000.

FIRST QUARTER HIGHLIGHTS:

—   Net sales increased 34% to $39.0 million, compared to last year's $29.2 million

—   Gross margins were 44.9%, 110 basis points ahead of the same quarter last year

—   Net income increased 27% to $1.3 million, compared to $1.0 million in the same quarter last year

—   Net income per diluted share totaled $.13 compared to $.12 last year (a)

(a)   Per share information for the first quarter of FY 2001 includes a 24% increase (1,955,000 shares) in the number of shares outstanding as a result of the Company's follow-on stock offering near the end of the first quarter of FY 2000.

"At our fashion trade shows during the past two months, our specialty retail sales team worked with record numbers of buyers for both our men's and women's collections," stated Harvey Jones, Chief Executive Officer.  "We believe the acceptance of our designs and brand is clearly demonstrated by the 69% growth that our specialty retail channel experienced during the first quarter."

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 14

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

29.    On December 7, 2000, the Individual Defendants caused Cutter & Buck to issue a press release entitled, "Cutter & Buck Reports Second Quarter Net Income Up 26%; Provides Outlook for the Second Half of Fiscal Year 2001." The press release stated in part:

> Cutter & Buck, Inc. today reported results for the second quarter of fiscal 2001, which ended October 31, 2000.
>
> SECOND QUARTER HIGHLIGHTS:
>
> –    Net sales increased 25% to $46.1 million, compared to last year's $36.9 million
>
> –    Gross margins were 44.6%, 81 basis points ahead of the same quarter last year
>
> –    Net income increased 26% to $3.1 million, compared to $2.4 million in the same quarter last year
>
> –    Net income per diluted share totaled $0.29, compared to $0.23 last year

30.    On February 6, 2001, the Individual Defendants caused Cutter & Buck to issue a press release entitled, "Cutter & Buck Reports Preliminary 3rd Quarter Fiscal Year 2001 Results." The press release stated in part:

> Cutter & Buck, Inc. announced today it expects to report net sales for the third quarter ended January 31, 2001 of approximately $32 million compared to $31.8 million for the same quarter a year ago. The company also expects to report a diluted net loss per share for the third quarter in the range of $0.07 to $0.10, and diluted net income per share for the nine months ended January 31, 2001 in the range of $0.31 to $0.34. The company's third quarter net loss resulted from lower than anticipated sales in the corporate and golf channels, which management attributed primarily to the sudden downturn in the U.S. economy and unusually cold winter weather in the Southern United States, respectively. "The third quarter has historically been a small one for us, and so the shortfall in sales quickly translated into losses. We expect to achieve increased sales growth and return to profitability in our seasonally strong fourth quarter," stated Harvey Jones, Chairman & CEO. "Although third quarter sales fell short of our expectations, we remain confident in the strength of our multi-channel distribution strategy and of the Cutter & Buck brand. We continue to experience brand momentum as evidenced by the enthusiastic reception to our new Fall line at the recent PGA show in Orlando."
>
> Inventory levels at the end of the third quarter, our seasonal peak, increased to approximately $61 million, and are higher than expected due to the unanticipated sales shortfall. The company remains in a solid financial

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 15

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

position with over $5 million in cash and approximately $21 million available under its $55 million credit facility.

31.   On March 9, 2001, the Individual Defendants caused Cutter & Buck to issue a press release entitled, "Cutter & Buck Reports Net Loss in the Third Quarter Fiscal Year 2001." The press release stated in part:

> Cutter & Buck, Inc. today reported sales and earnings for its third quarter and nine months ended January 31, 2001.

Third Quarter Highlights:

–   Net sales increased 2% to $32.4 million, compared to last year's $31.8 million

–   Gross margins were 45.8%, 94 basis points ahead of the same quarter last year

–   Net loss was $963 thousand, compared to net income of $1.4 million in the same quarter last year

–   Net loss per diluted share was $0.09 compared to net income per diluted share of $0.13 last year

Nine Months Year-To-Date Highlights:

–   Net sales increased 20% to $117.5 million, compared to last year's $97.9 million

–   Gross margins were 45.0%, 90 basis points ahead of the same period last year

–   Net income decreased 29% to $3.4 million from $4.8 million in the same period last year

–   Net income per diluted share totaled $0.32, compared to $0.49 for the same period last year

32.   On June 21, 2001, the Individual Defendants caused Cutter & Buck to issue a press release entitled, "Cutter & Buck Reports Fourth Quarter and Fiscal Year 2001 Results." The press release stated in part:

> Cutter & Buck, Inc. today reported sales and earnings for its fourth quarter and fiscal year ended April 30, 2001.

Fourth Quarter Results:

–   Net sales decreased 1.8% to $53.6 million, compared to $54.6 million for the same quarter last year

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 16

&mdash;    Gross margins were 35.1%, compared to 44.6% in last year's fourth quarter

&mdash;    Net income was $292 thousand, compared to net income of $5.8 million in the same quarter last year

&mdash;    Net income per diluted share was $0.03 compared to net income per diluted share of $0.55 last fourth quarter

Fiscal Year 2001 Results:

&mdash;    Net sales increased 12.2% to $171.1 million, compared to $152.5 million in fiscal year 2000

&mdash;    Gross margins were 41.9%, compared to 44.3% in fiscal year 2000

&mdash;    Net income decreased 65.2% to $3.7 million from $10.6 million in fiscal year 2000

&mdash;    Net income per diluted share was $0.35, compared to $1.06 last fiscal year

\*   \*   \*

Earnings Outlook:

For fiscal year 2002 the company expects annual earnings per share in the range of $0.31 to $0.38 driven by flat to high-single digit revenue growth and a 50 to 100 percent basis point improvement in gross margins, due to our higher margin consumer direct business accounting for a larger portion of total sales.

33.   On September 13, 2001, the Individual Defendants caused Cutter & Buck to issue a press release entitled, "Cutter & Buck Reports First Quarter Fiscal Year 2002 Operating Results."  The press release stated in part:

Cutter & Buck, Inc. today reported sales and earnings for its first quarter fiscal year 2002, ended July 31, 2001.

First Quarter Results:

&mdash;    Net sales decreased 3.3% to $37.7 million, compared to $39.0 million for the same quarter last year

&mdash;    Gross margins were 43.7%, compared to 44.9% in last year's first quarter

&mdash;    Net loss was $1.4 million, compared to net income of $1.3 million in the same quarter last year

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 17

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

–      Net loss per diluted share was $0.13 compared to net income per diluted share of $0.13 last year

–      Positive free cash flow (operating cash flow less capital expenditures) of $6.8 million compared to a negative $3.4 million during the first quarter last year

"Our results for the first quarter came in at the high end of our expectations, which keeps us on track to achieve our stated goals for fiscal year 2002," commented Harvey Jones, Chairman & CEO. "We still see full year earnings per share in the range of $0.31-$0.38 and positive free cash flow for the year. During the first quarter, sales to our golf and corporate channels declined 5.3% and 4.3% respectively, compared to a year ago, as a result of unfavorable economic and industry conditions. Sales to our specialty retail channel posted at 14.1% decrease from the first quarter a year ago, primarily due to the timing of shipments occurring later in the Fall season."

34.      On December 11, 2001, the Individual Defendants caused Cutter & Buck to issue a press release entitled, "Cutter & Buck Reports Second Quarter Fiscal Year 2002 Operating Results; Acts to Strengthen Core Businesses." The press release stated in part:

Cutter & Buck today reported sales and earnings for its second quarter fiscal year 2002, ended October 31, 2001.

Second Quarter Results:

–      Net sales decreased 6.9% to $42.9 million, compared to $46.1 million for the same quarter last year.

–      Gross margins were 39.5%, compared to 44.6% for the same quarter last year.

–      Net income was $225 thousand, compared to net income of $3.1 million for the same quarter last year.

–      Net income per diluted share was $0.02 compared to net income per diluted share of $0.29 for the same quarter last year.

–      Free cash flow (operating cash flow less capital expenditures) was $11.1 million compared to $3.2 million during the same quarter last year.

Six Months Year-To-Date Results:

–      Net sales decreased 5.3% to $80.6 million, compared to $85.1 million for the same period last year.

–      Gross margins were 41.5%, compared to 44.7% in the same period last year.

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297 F (425)747-1763

1     –     Net loss of $1.1 million, compared to net income of $4.4 million in the same period last year.

2

3     –     Net loss per diluted share of $0.11, compared to net income per diluted share of $0.42 in the same period last year.

4     –     Free cash flow (operating cash flow less capital expenditures) was $18 million compared to $0 in the same period last year.

5

6     35.     On March 14, 2002, the Individual Defendants caused Cutter & Buck to

issue a press release entitled, "Cutter & Buck Reports Third Quarter Fiscal Year 2002

7

Operating Results: Records Restructuring and Asset Impairment Charges Related to

8

Underperforming Businesses." The press release stated in part:

9

    Cutter & Buck, Inc. today reported sales and earnings for its third quarter fiscal year 2002, ended January 31, 2002.

10

11     For the third quarter, net sales increased 0.8% to $32.6 million from $32.4 million in the third quarter of last year. Net loss for the period was $8.4 million or $0.79 per share, compared to a net loss of $963 thousand or $0.09 per share in the same period last year. Excluding $7.4 million, which represents the pre tax amount recorded in this quarter for the previously announced restructuring and asset impairment charges and excluding $2.9 million of pre-tax inventory write down included in cost of sales, also relating to the restructuring and asset impairment charges, the net loss for the quarter would have been $1.2 million or $0.11 per share. Gross margin as a percentage of net sales was 34.1% in the third quarter compared to 45.8% in the same period last year. Excluding the inventory write down mentioned above, gross margin was 42.9% of net sales....

12

13

14

15

16

17     For the nine month period, net sales decreased 3.6% to $113.3 million form $117.5 million in the same period last year. Net loss for the period was $9.5 million or $0.90 per share, compared to net income of $3.4 million or $0.32 per diluted share in the same period last year. Excluding the restructuring and asset impairment charges, net loss was $2.3 million or $0.22 per share. Gross margin as a percentage of net sales was 39.4% in the nine month period compared to 45.0% in the same period last year. Excluding the inventory write down mentioned above, gross margin was 41.9% of net sales.

18

19

20

21

22     "We decided to streamline our business and to stop investing in some of our newer initiatives whose current sales do not justify their expense levels," said Marty Marks, President and COO. "These newer initiatives have absorbed considerable management time and attention, and we are now re-focusing on the areas where we have shown solid results in the past. We area also continuing to invest in our women's lines, and in product extensions."

23

24

25     "Our balance sheet remains strong," added Steve Lowber, Vice President & CFO. "We generated $1.3 million of free cash flow during the

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 19

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

third quarter and $19 million during the first nine months of fiscal year 2002. Our investment in inventory before the restructuring and asset impairment charge decreased by $10.5 million to $50.4 million from $60.9 million as of January 31, 2001. Classics merchandise, which we sell from season-to-season, represents approximately half of our current inventory. We plan to further reduce our inventories by over $10 million during the fourth quarter to end our fiscal year 2002 with inventories more closely aligned with sales."

Restructuring and Asset Impairment Charge

"As reported in our second quarter release, we are taking actions to reduce costs and re-focus on our core businesses," continued Lowber. "The restructuring and asset impairment charge is generally in line with what we expected and communicated in our December 11, 2001 earnings release. The total charge is expected to amount to $8.2 to $8.4 million after tax, of which $7.2 million has been recorded in the third quarter. The balance of the charge will be recorded in the fourth quarter.

We are closing our own operations in Europe, and plan to use a licensee to grow that business. In the third quarter, we wrote down our European assets in the amount of $3.5 million after tax. We anticipate an additional write-down of $1.0 to $1.2 million after tax in the fourth quarter. The closure of our direct operations in Europe will eliminate a drag on earnings that has amounted to approximately $0.06 per share during the past two years. Once we begin operations with a licensee, we expect to replace an earnings drag with profit contributor beginning in fiscal year 2003.

We have taken write-downs amounting to $1.8 million on five company-owned stores that have not performed up to our expectations. The $1.8 million includes costs to close three locations at their respective escape dates. This will reduce fiscal year 2003 operating expense by approximately $500 thousand and recognizes now, the financial impact of anticipated store closures in fiscal year 2004. We are also continuing to examine our retail business.

We decided to consolidate and restructure our women's line sales forces, in order to strengthen the sales effort for our business and drive better economics. This accounted for $1.1 million of the charge and is expected to eliminate an approximate $.04 per share drag on earnings per share in fiscal year 2003 and beyond.

In order to expedite our withdrawal from the golf shoe business and quickly convert the remaining inventory to cash, we have written down our shoe inventory in the amount of $0.8 million. We have received orders for most of the shoe inventory and expect to dispose of it by the end of our fourth quarter fiscal year 2002.

Over 80 percent of the charge recorded in the third quarter is non-cash, and on an after tax basis the charge is slightly cash positive. We believe the measures taken to streamline our operations enable us to focus more intensively on our core strengths and position us for a solid earnings rebound in fiscal year 2003."

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 20

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

Earnings Outlook:

As mentioned above, the fourth quarter results are expected to include an additional charge of $1.0 to $1.2 million after tax related to the transition of our European operations through April 30, 2002. For fiscal year 2002, the company expects a moderate decline in revenue in the low to middle single digit range and a net loss per share in the range of $0.75 to $0.79 including the restructuring and asset impairment charges. For fiscal 2002, the company expects earnings per share in the range of $0.01 to $0.03, excluding the restructuring and asset impairment charges.

36.    On April 19, 2002, the Individual Defendants caused Cutter & Buck to issue a press release entitled, "Cutter & Buck CEO Resigns; Company Updates Fourth Quarter Earnings Outlook." The press release stated in part:

Cutter & Buck, Inc. today announced that Harvey Jones has resigned both as Chairman and Chief Executive Officer and as member of the Board of Directors and will remain with the company as Founder and Brand Strategist. Board member Fran Conley has been appointed interim Chairman of the Board and CEO, and Marty Marks, President, will concentrate on the priority areas of the business, including international.

"I've had a great run," said Jones, but it's time for a change – for me and for Cutter & Buck. I'm proud of what I've been able to accomplish since this company was formed twelve years ago – strong brand loyalty from out customers, a quality line of products and a group of outstanding employees. As our company has evolved, so too should its leadership. The time is right for that new leadership to take Cutter & Buck to the next level." "Harvey brought this company from its beginning to where it is today," said interim CEO Conley. "Very few founders accomplish what Harvey has accomplished, developing an idea into an international brand, building sales in excess of $150 million and a company of over 700 employees. We have all benefited from his vision and his leadership. We are pleased Harvey will continue to be involved with the company, contributing his vision, energy and ideas in his new role as Founder and Brand Strategist."

Interim CEO Fran Conley has been involved with the Company since 1990 as a board member and venture capitalist. She is president of Roanoke Capital, Ltd, and a board member of Coinstar and R.E.I. She has previously handled CEO-transition responsibilities at Edmark Corp, Data I/O, and Etcetera Inc. "I look forward to working with the fine people of Cutter & Buck," said Conley. "We will be doing a nationwide search for a CEO to guide this company through its next phase."

Cutter & Buck also announced that for the current quarter ending April 30, 2002 sales are expected to be in the range of $52 to $54 million. For the quarter, the Company now expects a net loss in the range of $500 thousand to $1 million or $0.05 to $0.10 per share, after the previously-announced restructuring charge of approximately $1.2 million. "Our gross margins are lower than we had projected," said Steve Lowber, Vice

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

President and CFO, "as we have more aggressively worked off our excess inventories which are now expected to come down by over $15 million during the quarter.  We will also be incurring some additional costs related to the changes announced above."

37.     On June 20, 2002, the Individual Defendants caused Cutter & Buck to issue a press release entitled, "Cutter & Buck Reports Fiscal Year and Fourth Quarter 2002 Operating Results, Provides Fiscal Year 2003 Guidance."  The press release stated in part:

> Cutter & Buck, Inc. today reported sales and earnings for its fiscal year and fourth quarter ended April 30, 2002.
>
> For the year, net sales were $167.7 million and the net loss was $10.8 million or $1.02 per share after restructuring charges.  This compares to fiscal year 2001 net sales of $171.1 million and a net income of $3.7 million or $0.35 per share.
>
> For the fourth quarter, net sales were $54.5 million and the net loss was $1.3 million or $0.13 per share.  This compares to fourth quarter fiscal year 2001 net sales of $53.6 million and net income of $0.3 million or $0.03 per share.  For fiscal year 2003 the company expects sales in the range of $157 million to $162 million, and net income of $0.5 to $1.1 million or $0.05 to $.10 per share.  This net income estimate is after an expected first quarter fiscal year 2003 charge of approximately $2.5 million net of tax, or $0.24 per share, related to excess warehouse space.
>
> "The fiscal year 2002 loss had several clear causes," said Fran Conley, CEO.  "We have already acted to change these factors, and we expect Cutter & Buck to be profitable in fiscal year 2003."

38.     On August 12, 2002, the Individual Defendants caused Cutter & Buck to issue a press release entitled, "Cutter & Buck Announces Discovery of Accounting Irregularities in Fiscal Years 2000 and 2001; Reports Resignation of Chief Financial Officer; Announces Preliminary First Quarter Fiscal Year 2003 Operating Results."  The press release stated in part:

> CEO Fran Conley today announced that the Company plans to restate its audited financial statements for the fiscal years ended April 30, 2000 and April 30, 2001.  The restatements will correct entries of sales into incorrect periods, and inaccurate reporting of sales by distribution channels. Although the matter is still under review, the Company does not have any reason to believe that its current net worth will be affected or that there will be any change in the Company's total sales for the past three years.
>
> The adjustments stem from certain transactions that were discovered by Conley following her recent appointment as Chief Executive Officer.  A Committee formed by Conley, and made up of her and the Board's Audit

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 22

LAW OFFCIES OF KIRK R. MULFINGER
1020 108ᵗʰ Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

Committee is conducting an investigation of accounting issues with respect to revenue recognition for the fiscal years ended April 30, 2000 and April 30, 2001 and its potential impact on the past fiscal year ended April 30, 2002.  The Committee has retained special outside counsel to assist with this investigation. *The investigation was triggered by shipments of approximately $5.8 million to three distributors during fiscal year 2000 which had been recorded as sales of inventory for that year but were evidently made on a consignment basis. These shipments should not have been recorded as sales until the merchandise was resold by the distributors.  After it became apparent to the Company's former management that the three distributors would not be able to sell most of this product, the Company arranged for the merchandise to be returned to Cutter & Buck at the end of fiscal year 2001.  That reacquisition was accounted for as a reduction in sales during fiscal year 2001.*

*The business transactions at issue were not disclosed to the Company's then outside members of its Board of Directors and were not discussed with the Company's auditors.  Rather, there is evidence that the Company's standard accounting practices and controls were circumvented and that sales returns in fiscal 2001 were intentionally mis-allocated to several of the Company's business lines instead of the business line under which those sales were originally booked.  The Committee believes that some members of the Company's former management may have received increased incentive compensation as a result of the overstated FY 2000 financial results.*

"The Board has always been committed to operating the Company with the highest levels of integrity," said Conley. "We area appalled at this discovery and we are determined that nothing like this will happen at Cutter & Buck in the future.  We want this investigation to root out the full extent of any financial reporting issues.  I am absolutely committed, as is the current leadership team, to strengthening our Company's values and building the systems we need.  Cutter & Buck will be the kind of company that our shareholders and employees want it to be – rooted in integrity, and bolstered with strong systems and controls.

"The managers responsible for these business decisions and those who were responsible for the integrity of the Company's financial statements no longer have any role with the Company," said Conley. "They include the former Chairman and Chief Executive Officer, the former President and Chief Operating Officer, the former Chief Financial Officer, the former Manager of Corporate Sales and the former Controller."

On Friday, the Company accepted the resignation of Stephen S. Lowber, the Company's Chief Financial Officer.  Lowber joined the Company in 1997.

The Committee is working to conclude its investigation expeditiously and the Company currently anticipates filing its annual report on Form 10-K for the fiscal year ended April 30, 2002 by mid September. *The Company will also restate its financial results for the relevant quarters during the periods in question and may need to correct other sales entries which more properly should have been reported in later*

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 23

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

*periods.  As a result, investors should not rely on the currently reported financial statements and reports for the fiscal years 2000 through 2002.*

        Due to the discovery of the accounting irregularities, the Company's auditor, Ernst & Young, believes there is a material weakness in the Company's internal controls and operations.  The Committee is reviewing the matter as part of its investigation and will recommend that the Company immediately remedy any deficiencies.  The Company has informed the staff of the SEC of its internal investigation and plans to keep the SEC informed of its progress.

39.    In order to inflate the price of Cutter & Buck's stock, the Individual Defendants now admitted that throughout the Relevant Period and before, the Individual Defendants caused the Company to falsely report its financial results which requires a restatement for fiscal years 2000, 2001 and 2002.

## CUTTER & BUCK'S FALSE FINANCIAL REPORTING DURING THE RELEVANT PERIOD

40.    The Individual Defendants have now admitted that they had inappropriately caused Cutter & Buck to misstate the Company's financial results due to improper revenue recognition, specifically including the Company's improper entries of sales into incorrect periods and inaccurate reporting of sales by distribution channels, which caused the Company to improperly recognize revenue for the fiscal years ended 2000, 2001 and 2002, and caused Cutter & Buck to restate those results to remove improperly reported revenues, such that the Company's financial statements, for fiscal years 2000, 2001 and 2002, were not a fair presentation of actual results and were presented in violation of Generally Accepted Accounting Principles ("GAAP") and SEC rules.

41.    GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time.  SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate, despite footnotes or other disclosures.  Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297 F (425)747-1763

1   would be duplicative of disclosures accompanying annual financial statements.   17 C.F.R.

2   §210.10-01(a).

3       42.    GAAP, as described by FASB Statement of Financial Accounting Concepts

4   No. 5, states that income should not be recorded unless it has been both earned and

5   realizable or collectible.  GAAP as set forth in FASB Statement of Financial Accounting

6   Standard No. 5 requires that liabilities be recorded when a loss is probable and can be

7   reasonably estimated.

8       43.    The Individual Defendants are now forced to admit that they caused Cutter

9   & Buck to improperly recognize revenue and fail to properly record its liabilities for fiscal

10   years 2000, 2001 and 2002.  The fact that Cutter & Buck has mentioned the likelihood of

11   restatement of its past financial statements is an admission that the financial statements

12   originally issued were false and that the overstatement of revenues and income was

13   material.  Pursuant to GAAP, as set forth in Accounting Principles Board Opinion ("APB")

14   No. 20, the type of restatement announced by Cutter & Buck was to correct for material

15   errors in its previously issued financial statements.  *See* APB No. 20, ¶¶7-13.   The

16   restatement of past financial statements is a disfavored method of recognizing an

17   accounting change as it dilutes confidence by investors in the financial statements, it

18   makes it difficult to compare financial statements and it is often difficult, if not impossible,

19   to generate the numbers when restatement occurs.  *See* APB No. 20, ¶14.  Thus, GAAP

20   provides that financial statements should only be restated in limited circumstances, *i.e.*,

21   when there is a change in the reporting entity, there is a change in accounting principles

22   used or to correct an error in previously issued financial statements.  Cutter & Buck's

23   restatement was not due to a change in reporting entity or a change in accounting principle,

24   but rather to errors in previously issued financial statements.  Thus, the restatement is an

25   admission by the Individual Defendants that the Company's previously issued financial

    results and its public statements regarding those results were false and misleading.

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

44.     The fact that the Individual Defendants used the term "irregularities" in Cutter & Buck's releases indicates the misstatements were intentional.   According to accounting literature, irregularities refers specifically to intentional misstatements.

45.     Due to these accounting improprieties, the Individual Defendants caused the Company to present its financial results and statements in a manner which violated GAAP, including the following fundamental accounting principles:

(a)     The principle that interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements was violated (APB No. 28, ¶10);

(b)     The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions was violated (FASB Statement of Concepts No. 1, ¶34);

(c)     The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events and circumstances that change resources and claims to those resources was violated (FASB Statement of Concepts No. 1, ¶40);

(d)     The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it was violated.   To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, ¶50);

(e)     The principle that financial reporting should provide information about an enterprise's financial performance during a period was violated.   Investors and creditors often use information about the past to help in assessing the prospects of an enterprise.   Thus, although investment and credit decisions reflect investors' expectations

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, ¶42);

(f)    The principle that financial reporting should be reliable in that it represents what it purports to represent was violated.  That information should be reliable as well as relevant is a notion that is central to accounting (FASB Statement of Concepts No. 2, ¶¶58-59);

(g)    The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions was violated (FASB Statement of Concepts No. 2, ¶79); and

(h)    The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered was violated.  The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶95, 97).

46.    Further, the undisclosed adverse information effectively concealed by the Individual Defendants during the Relevant Period is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

47.    The statements made and/or ratified by the Individual Defendants, examples of which are contained in the Cutter & Buck releases referred to above, which announced Cutter & Buck's financial results, were materially false and did not reflect the true financial condition of the Company at the time of publication of each such release.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 27

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

**THE CUTTER & BUCK BOARD HAS REFUSED TO PROPERLY MAXIMIZE SHAREHOLDER VALUE AND HAS BREACHED ITS FIDUCIARY DUTIES OWED TO THE SHAREHOLDERS OF CUTTER & BUCK**

48.     The Director Defendants, by causing, approving and/or authorizing the issuance of false and misleading statements and financial results and/or acquiescing in their publication, breached the fiduciary duties owed to the Company and its shareholders, for at least the following reasons:

(a)     It was a breach of fiduciary duty for the Individual Defendants, as members of the Board and, in the case of Lowber, as the most senior officer overseeing Cutter & Buck's accounting and auditing functions, to systematically fail to exercise oversight of Cutter & Buck's corporate financial record keeping, accounting and auditing procedures in compliance with GAAP and in order to present shareholders and investors with information concerning the Company's financial condition that was not false and misleading.  Moreover, the Individual Defendants knew that such improper accounting treatment would cause the Company's assets to be overstated on the Company's financial statements and that the false and misleading financial statements and releases relating thereto would be published and relied upon by shareholders and investors.  Such actions and omissions of the Individual Defendants constitute a knowing reckless or negligent failure to supervise and monitor the financial affairs of the Company, which resulted in harm to investors and shareholders after Cutter & Buck was forced to admit that the Company will be required to restate its earnings for fiscal years 2000, 2001 and 2002;

(b)     It was a breach of fiduciary duty for the Individual Defendants, and particularly Conley, Mounger and Towne who served as members of Cutter & Buck's Audit Committee, to cause, approve and/or authorize in connection with Cutter & Buck's accounting, auditing and financial reporting practices, including the reporting of false financial results and false statements due to entries to sales into incorrect periods and inaccurate reporting of sales by distribution channels in order to inflate the Company's operating performance, causing the Company's stock to trade at artificially inflated levels.

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

The Individual Defendants have now admitted that Cutter & Buck's revenue and earnings for fiscal years 2000, 2001 and 2002 were materially overstated.  By virtue of the actions and omissions complained of herein, the Individual Defendants systematically failed to exercise oversight of Cutter & Buck's corporate financial record keeping, accounting and auditing procedures to ensure accurate accounting treatment in compliance with GAAP and in order to present shareholders and investors with an accurate view of the Company's financial condition.  Moreover, the Individual Defendants knew that such improper accounting treatment would cause the Company's assets to be overstated on the Company's financial statements and that the financial statements and releases relating thereto would be published and relied upon by shareholders and investors.  Such actions and omissions of the Individual Defendants constitute a knowing reckless or negligent failure to supervise and monitor the financial affairs of the Company which resulted in harm to investors and shareholders after Cutter & Buck was forced to admit that it must restate its earnings; and

        (c)    It was a breach of fiduciary duty for the Individual Defendants to cause,

approve and/or authorize publication of the Company's financial statements containing artificially inflated operating results that created the false and misleading impression that the Company was performing according to or exceeding their guidance, when the Individual Defendants knew that the financial statements were predicated upon the improper accounting treatment of Cutter & Buck's sales transactions, specifically including improper revenue recognition due to the improper entries of sales into incorrect periods and inaccurate reporting of sales by distribution channels.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

49.    The Plaintiff brings this action derivatively in the right and for the benefit of Cutter & Buck to redress injuries suffered and to be suffered by Cutter & Buck as a direct result of the breaches of fiduciary duty, violations of law and waste of corporate assets, as

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 29

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

1  well as the aiding and abetting thereof, by the defendants. This is not a collusive action to

2  confer jurisdiction on this Court, which it would not otherwise have.

3       50.    Plaintiff will adequately and fairly represent the interests of Cutter & Buck

4  in enforcing and prosecuting its rights.

5       51.    Plaintiff is and was an owner of Cutter & Buck stock at times relevant to the

6  Individual Defendants' illegal and wrongful course of conduct alleged herein.

7       52.    The Board of Cutter & Buck, at the time of the filing of the complaint,

8  consisted of the following individuals: defendants Conley, Mounger, Brownfield, and

9  Towne. Plaintiff has not made any demand on the present Board of Cutter & Buck to

10  institute this action because such a demand would be a futile, wasteful and useless act,

11  particularly for the following reasons:

12       (a)    Defendant Conley, as interim Chairman and CEO, currently is an

13  inside Director of Cutter & Buck, and her principal professional occupation is her

14  employment with Cutter & Buck, pursuant to which she receives substantial monetary

15  compensation and other benefits. Accordingly, defendant Conley is beholden to the other

16  Director Defendants to maintain her employment with Cutter & Buck and related benefits,

17  rendering her incapable of impartially considering a demand to commence and vigorously

18  prosecute this action;

     (b)    As a result of their knowledge of, access to and review of internal

19  corporate documents; conversations and connections with other corporate officers,

20  employees and Directors; and attendance at Board meetings, each of the Director

21  Defendants knew the adverse non-public information regarding the improper accounting

22  and yet each of the Director Defendants has failed to take any action to prevent or correct

23  the acts complained of herein;

24       (c)    According to Cutter & Buck's most recent Proxy Statement filed

25  with the SEC, defendants Conley (Chair), Mounger, and Towne, during the relevant

period, were members of the Company's Audit Committee. The Audit Committee is

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 30

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297 F (425)747-1763

1 | responsible for monitoring the quality and integrity of the Company's financial reporting
2 | process and systems of internal controls regarding finance, accounting and legal
3 | compliance, as well as monitoring compliance with legal and regulatory requirements.
4 | Nonetheless, the Audit Committee approved the Company's financial reporting during the
5 | Relevant Period and was forced to recommend to the Board that the Company's financial
6 | statements for fiscal years 2000, 2001 and 2002 be restated due to improper accounting
7 | and financial reporting. By such actions, these defendants breached their duties by causing
8 | or allowing the improper financial reporting described above.   As a result of the
9 | defendants' breach of these duties, in taking the action requested by plaintiff herein, there
10 | is a substantial likelihood of liability as to defendants Conley, Mounger and Towne.

11 |         (d)     The Compensation Committee of the Board determines the persons
12 | who are to receive awards relating to their employment or service for Cutter & Buck, the
13 | number of shares subject to each such award and the terms and conditions of each such
14 | award.   The Compensation Committee is comprised of defendants Mounger (Chair),
15 | Brownfield and Conley.  As the members of the Compensation Committee singularly
16 | control the other defendants' awards, the remaining members of the Board will not institute
17 | this action against defendants Mounger, Brownfield and Conley.   To do so would
18 | jeopardize each defendant's personal financial compensation.  Thus, demand on defendant
19 | Towne is futile;

20 |         (e)     The entire Cutter & Buck Board and senior management, including
21 | former directors Jones and Marks and former officer Lowber, participated in the wrongs
22 | complained of herein.   Cutter & Buck's Directors and senior management are not
23 | disinterested or independent because the Director Defendants served on the Cutter & Buck
24 | Board during the Relevant Period.  Pursuant to their specific duties as board members,
25 | each was charged with the management of the Company and to conduct its business
affairs. Each of the above-referenced defendants breached the fiduciary duties that they
owed to Cutter & Buck and its shareholders in that they failed to prevent and correct the

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 31

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

improper accounting and financial reporting.   Thus, the Cutter & Buck Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action, because its members are interested personally in the outcome, as it is their actions which have subjected Cutter & Buck to millions of dollars in liability for possible violations of applicable securities laws;

(f)     Director Defendants Conley, Brownfield, Mounger, Towne, Jones and Marks received stock options annually to serve on the Board and its committees. Thus, these defendants had every incentive to participate in the improper accounting in order to effectuate a commensurate rise in Cutter & Buck's stock price;

(g)     Each of the key officers and Directors knew of and/or directly benefited from the wrongdoing complained of herein;

(h)     The Director Defendants, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Cutter & Buck's stockholders, or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties;

(i)     The acts complained of herein constitute violations of the fiduciary duties owed by Cutter & Buck's officers and Directors and these acts are incapable of ratification;

(j)     The acts of the Director Defendants complained of herein demonstrate a lack of good faith in that the Director Defendants failed to provide oversight of Cutter & Buck's accountants and auditors to ensure that sales transactions were properly disclosed, accounted for and reported.   The acts and omissions complained of occurred with each Director's knowledge of the adverse non-public information about the Company's business, as well as its finances, markets and present and future business prospects via access to internal corporate documents (including Cutter & Buck's operating plans, budgets and forecasts and reports of actual operations compared thereto),

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

1  conversations and connections with corporate officers and employees, attendance at Board

2  of Directors' meetings and committees thereof, and via reports and other information

3  provided to each Director in connection therewith.  By virtue of the systematic failure of

4  the Director Defendants in fulfilling their fiduciary and other duties which required them to

5  exercise appropriate oversight of Cutter & Buck's accountants and auditors to ensure

6  accurate financial reporting, Cutter & Buck's directors' illegal acts and practices cannot be

7  deemed the valid exercise of business judgment;

8  (k)    Each of the Director Defendants authorized and/or permitted the

9  false statements disseminated directly to the public or made directly to securities analysts

10  and which were made available and distributed to shareholders, authorized and/or

11  permitted the issuance of various of the false and misleading statements and are principal

12  beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully

13  prosecute such a suit even if such suit was instituted by them;

14  (l)    Any suit by the current Directors of Cutter & Buck to remedy these

15  wrongs would likely expose the Individual Defendants and Cutter & Buck to further

16  violations of the securities laws, which would result in civil actions being filed against one

17  or more of the Individual Defendants, thus they are hopelessly conflicted in making any

supposedly independent determination whether to sue themselves;

18  (m)    Cutter & Buck has been and will continue to be exposed to

19  significant losses due to the wrongdoing complained of herein, yet the Director Defendants

20  have not filed any lawsuits against themselves or others who were responsible for that

21  wrongful conduct to attempt to recover for Cutter & Buck any part of the damages Cutter

22  & Buck suffered and will suffer thereby;

23  (n)    If the Director Defendants were to bring this derivative action

24  against themselves, they would thereby expose their own misconduct, which underlies

25  allegations against them contained in class action complaints for violations of securities

law, which admissions would impair their defense of the class actions and greatly increase

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 33

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants. In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions. This they will not do. Thus, demand is futile; and

(o)     If Cutter & Buck's current and past officers and Directors are protected against personal liability for their acts of mismanagement, abuse of control, breach of fiduciary duty and unjust enrichment alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Cutter & Buck. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions which eliminate coverage for any action brought directly by Cutter & Buck against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if the Director Defendants were to sue themselves or certain of the officers of Cutter & Buck, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all, then the Director Defendants will not cause Cutter & Buck to sue them, since they will face a large uninsured liability.

53.     Moreover, despite the Director Defendants having knowledge of the claims and causes of action raised by plaintiff, they have failed and refused to seek to recover for Cutter & Buck for any of the wrongdoing alleged by plaintiff herein.

54.     The Director Defendants, as a result of the substantial financial benefits they received and continue to receive as a result of their positions at Cutter & Buck, engaged in and/or aided and abetted and/or acquiesced in the wrongful actions complained

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 34

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297 F (425)747-1763

of herein and resolved all conflicts of interest in favor of themselves in order to protect and preserve their positions with Cutter & Buck and the financial benefits that flow therefrom.

55.     In order to facilitate and to attempt to conceal their wrongdoing, the Director Defendants have caused Cutter & Buck to maintain an inadequate system of internal financial and accounting controls such that Cutter & Buck's assets have not been reasonably safeguarded against misuse.

56.     The name of each person and/or entity who is responsible for, participated in, conspired to bring about, or substantially and knowingly aided and abetted the fraud complained of herein, is set forth in the caption of this Complaint.  Furthermore, Cutter & Buck's Board operated as a collective entity through periodic meetings held either in person or telephonically where the Board discussed matters affecting its business and reached collective and consensual decisions as to what action to take.

57.     Plaintiff has not made any demand on shareholders of Cutter & Buck to institute this action since such demand would be a futile and useless act for the following reasons:

a)     Cutter & Buck is a publicly held company with approximately 10 million shares outstanding, and thousands of shareholders;

b)     Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

c)     Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## DAMAGES TO CUTTER & BUCK

58.     As a result of the Individual Defendants' wrongful and illegal actions, including their abuse of control and their unjust enrichment, defendants' violations of state and federal securities laws, and the failure to maintain a system of internal financial and accounting controls adequate to ensure the preservation of the Company's assets (including

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 35

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

both tangible and intangible assets), Cutter & Buck has suffered considerable damage to and drastic diminution in value of its tangible and intangible assets.

59.     Cutter & Buck has and will expend significant sums of money as a result of the illegal and improper actions described above.  Such expenditures will include, but are not limited to:

(a)     Costs incurred as a result of the restatement or restatements;

(b)     Costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

(c)     Costs and legal fees for defending Cutter & Buck, its officers and its Directors against private litigation arising from the illegal and improper conduct alleged herein.

60.     Moreover, these actions have irreparably damaged Cutter & Buck's corporate image and goodwill.  For at least the foreseeable future, Cutter & Buck will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Cutter & Buck's ability to raise equity capital or debt on favorable terms in the future is now impaired.

61.     Furthermore, the Individual Defendants actions have caused the price of Cutter & Buck stock to fall from a Relevant Period high of $15.94 to close on August 12, 2002 at $4.02.  This amounts to a loss well over $100 million of Cutter & Buck's market capitalization.

## FIRST CAUSE OF ACTION

### Against All Defendants for Breach of Fiduciary
### Duties of Loyalty and Due Care

62.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

1    63.    Defendants deliberately engaged in conduct in breach of their fiduciary

2  duties to Cutter & Buck, including, among other things:

3          (a)    Continuously causing the Company to improperly account for sales

4  transactions, specifically including the Company's improper entries of sales into incorrect

5  periods and inaccurate reporting of sales by distribution channels, which caused the

6  Company to improperly recognize revenue for the fiscal years ended 2000, 2001 and 2002,

7  which were improperly accounted for under GAAP and would require restatement of the

8  Company's financial statements;

9          (b)    Continuously causing the Company to artificially inflate operating

10  results and create the false and misleading impression that Cutter & Buck was performing

11  according to guidance sponsored by the Individual Defendants, when such defendants

12  knew that they had caused and/or authorized the Company to improperly account for sales

transactions, specifically including the Company's improper entries of sales into incorrect

13  periods and inaccurate reporting of sales by distribution channels, which caused the

14  Company to improperly recognize revenue for the fiscal years ended 2000, 2001 and 2002,

15  which merely created the false impression that the Company was operating according to

16  such guidance;

17          (c)    *Continuously causing Cutter & Buck to manipulate its reported*

18  results during the Relevant Period by improperly accounting for and reporting sales

19  transactions, specifically including the Company's improper entries of sales into incorrect

20  periods and inaccurate reporting of sales by distribution channels, which caused the

21  Company to improperly recognize revenue for the fiscal years ended 2000, 2001 and 2002,

22  *and thereby rendered Cutter & Buck's financial statements false and misleading; and*

23    64.    By reason of the foregoing, plaintiff, as a shareholder and representative of

24  Cutter & Buck, seeks relief for Cutter & Buck, which has sustained and will continue to

25  sustain irreparable harm and has no adequate remedy at law.

**SECOND CAUSE OF ACTION**

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

**Against All Defendants for Abuse of Control**

65.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

66.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Cutter & Buck, for which they are legally responsible.

67.     As a direct and proximate result of the Individual Defendants' abuse of control, Cutter & Buck has sustained significant damages.

68.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

69.     By reason of the foregoing, plaintiff, as a shareholder and representative of Cutter & Buck, seeks relief for Cutter & Buck, which has sustained and will continue to sustain irreparable harm and has no adequate remedy at law.

### THIRD CAUSE OF ACTION

**Against All Defendants for Gross Mismanagement**

70.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

71.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Cutter & Buck in a manner consistent with the operations of a publicly held corporation.

72.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Cutter & Buck has sustained damages.

73.     As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

74.     By reason of the foregoing, plaintiff, as a shareholder and representative of Cutter & Buck, seeks relief for Cutter & Buck, which has sustained and will continue to sustain irreparable harm and has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### Against All Defendants for Unjust Enrichment

75.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

76.     By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of Cutter & Buck.

77.     Plaintiff seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

78.     By reason of the foregoing, plaintiff, as a shareholder and representative of Cutter & Buck, seeks restitution and disgorgement of profits for the Company as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment, including preliminary and permanent injunctive relief, in favor of Cutter & Buck and against all defendants, and each of them, as follows:

A.     Declaring that all defendants, and each of them, have breached and are breaching their fiduciary and other duties to Cutter & Buck and its public shareholders;

B.     Granting compensatory damages against defendants in favor of Cutter & Buck;

C.     Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 39

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

1 constructive trust on or otherwise restricting the proceeds from defendants' improper

2 activities or their other assets so as to assure that plaintiff on behalf of Cutter & Buck has

3 an effective remedy;

4      D.     Awarding plaintiff's costs and disbursements and plaintiff's attorneys' fees;

5 and

6      E.     Granting such other and further relief as the Court may deem just and

7 proper.

**JURY DEMAND**

8

9 Plaintiff demands a trial by jury.

10

11 DATED this ⟋⟍ day of July, 2003.

12

                                          LAW OFFICES OF KIRK R. MULFINGER

13

14

15

16                                           KIRK R. MULFINGER
                                          WSBA # 27130

17

18                                           ROBBINS UMEDA & FINK, LLP

19                                           BRIAN J. ROBBINS
                                          MARC UMEDA

20                                           JEFFREY P. FINK
                                          1010 Second Ave., Suite 2360

21                                           San Diego, CA  92101
                                          Telephone: 619/525-3990

22                                           619/525-3991 (fax)

23                                           Attorneys for Plaintiff

24

25

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 40

LAW OFFCIES OF KIRK R. MULFINGER
1020 108th Avenue NE Suite 215
Bellevue, Washington 98004
T (425)454-0297  F (425)747-1763

## VERIFICATION

I, Jeffrey P. Fink, hereby declare as follows:

1.     I am a member of the law firm of Robbins Umeda & Fink, LLP, counsel for plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

2.     I make this Verification because plaintiff is absent from the County of San Diego where I maintain my office.

Executed this 26th day of June, 2003, at San Diego, California.

_____
Jeffrey P. Fink